CRONIN, JR., ET AL., APPELLEES, *v.* GREENWALD ET AL., APPELLANTS.

(No. 7517—Decided January 14, 1952.)

*Messrs. Barbour, Kimpel & Allen,* for appellees.
*Messrs. Weiland, Solinger & D'Angelo,* for appellants.

*Per Curiam.* This is an appeal from a judgment for the plaintiffs by the Common Pleas Court in an action for breach of a written contract. The action was tried to the court without a jury upon an agreed statement of facts referred to in the judgment entry and filed by leave with the papers in the case. Attached to the agreed statement are an agreement and supplemental agreement, but, as the supplemental agreement has no relation to the provisions of the primary agreement pertinent to this controversy, no further reference to the supplemental agreement will be necessary.

The plaintiffs and others owned all the issued and outstanding capital stock of a corporation organized under the laws of Kentucky, known as the Pilgrim Distributing Corporation. The plaintiffs and the holders of the residue of the stock entered into a written agreement to sell the entire issue to the defendants for $32.50 per share, subject to certain conditions and recitals requiring the sellers to do certain things to enable the defendants to enjoy the benefit of their pur-

chase. One of those provisions related to an asset of doubtful value growing out of the claims and counter-claims of Pilgrim Distributing Corporation and Galsworthy, Inc., against one another. It is that part of the written agreement that the plaintiffs assert imposed an obligation upon the defendants, which the defendants failed to perform to plaintiffs' damage.

The claims of Pilgrim Distributing Corporation and Galsworthy, Inc., were the subject matter of litigation pending in Hamilton county, Ohio, and reference to this fact was made in several places in the agreement. The event showed that the claim was of no value, and this litigation relates only to the attorneys' fees that were incurred in the prosecution of the litigation.

The first mention of the Galsworthy, Inc., item in the contract is found in a paragraph relating to Charles J. Cronin, Jr. It recites: "As a further consideration for the purchase of said shares of stock, Charles J. Cronin, Jr.,—hereby agrees with parties of the second part to place in escrow such amount in cash or at his option to furnish a bond—to protect and indemnify said Pilgrim Distributing Corporation against such sum or sums of money, if any—. Also for the purpose of protecting and indemnifying said Pilgrim Distributing Corporation for his proportionate share—of such sum or sums of money, if any, as it may have to pay by reason of claims or counter-claims by Galsworthy, Inc., —; attorneys' fees in connection with the Galsworthy, Inc., litigation in the event there is no recovery from Galsworthy, Inc."

In order to construe their language into a promise by the defendants to reimburse the plaintiffs, it would be necessary to effect a complete transposition. By the plain language, the obligation is imposed on the plaintiff Cronin, Jr., to indemnify and reimburse Pil-

grim Distributing Corporation, and as the defendants were to become the owners of all its capital stock, they were the sole beneficiaries of the provision.

The next mention of the Galsworthy, Inc., item is found in a similar agreement to establish an escrow fund made by an associate of the plaintiffs as to the shares of stock owned by him. The language of the Cronin agreement—"Attorneys' fees in connection with the Galsworthy, Inc., litigation in the event there is no recovery from Galsworthy, Inc.,"—is repeated *in haec verba.* This reference only emphasizes that Pilgrim Distributing Corporation was to be saved harmless against any claim for attorneys' fees in the event there was no recovery from Galsworthy, Inc.

The next and last mention of the Galsworthy, Inc., item is contained in a recital that in fixing the selling price of the stock at $32.50 per share, the claim of $12,000 against Galsworthy, Inc., plus an estimated fee of $3,000, had been deducted. This was followed by a statement that as a further consideration for the sale at that figure, the defendants agreed "that Pilgrim Distributing Corporation will pay such actual court costs and expenses, exclusive of attorneys' fees as may arise in connection with said litigation." This was followed by a provision that in the event there was a recovery against Galsworthy, Inc., the plaintiffs and their associates should get the benefit of the net recovery, calculated by deducting actual costs, expenses and attorneys' fees in connection with the litigation.

Inasmuch as there was no recovery from Galsworthy, Inc., it would seem that as the event upon which the provision last mentioned was to become operative had not transpired, the contract would stand as though it had never been in the contract, unless it can be said to shed some light on the meaning of the

other provisions of the contract. And used for this purpose, it seems to us that it only emphasizes their meaning, that in order to get $32.50 per share the plaintiffs and their associates agreed that the attorneys' fees in the Galsworthy, Inc., litigation were to be paid by them under the escrow agreement or in the event of a recovery in that litigation out of the proceeds of the recovery. At no point is there any agreement to pay by the defendants.

In fact, that last provision ends with the statement: "In the event there is no recovery from Galsworthy, Inc., parties of the first part agree to pay all attorneys' fees in connection with said litigation as above provided."

Counsel for defendants contend that the agreement recites that $3,000 was withheld to pay these attorneys' fees. We do not so construe the language used. It is true the contract recites that in determining the selling price of $32.50 per share, the Galsworthy, Inc., item plus attorneys' fees was deducted, but that is quite different from saying that amount was withheld to pay attorneys' fees. If such had been the intent there would have been no occasion for the rather careful provisions to indemnify the defendants against these attorneys' fees in the event there was no recovery. Having been fully indemnified by the deduction, any further indemnity would have been superfluous.

We are aware that under certain circumstances, a promise will be implied from the terms of a written contract, but certainly no such implication can arise to nullify express terms of the writing.

In 12 American Jurisprudence, at 767 *et seq.*, Section 239, it is said:

"No terms or conditions can be implied which are inconsistent with the expressed provisions. Express

stipulations cannot, in general, be set aside or varied by implied promises. In other words, a promise is not implied where there is an express written contract, unless the express contract has been rescinded or abandoned. It is only where the express contract is silent that the implied contract can arise. It is said that where the meaning of a contract is plain, another meaning cannot be added by implication or intendment. The object of the interpretation of a contract is to ascertain the intention of the parties which must be determined from the language used in the instrument, and not from any surmises that the parties intended certain conditions which they failed to express. The absence of a provision from a contract is evidence of an intention to exclude it rather than of an intention to include it.''

See, also, 9 Ohio Jurisprudence, 399, Section 174.

For these reasons, the judgment is reversed and final judgment is rendered by this court in favor of the defendants-appellants.

*Judgment reversed.*

HILDEBRANT, P. J., MATTHEWS and ROSS, JJ., concur.